417 P.2d 246

**Ruth W. SHUPE, Plaintiff and Respondent,**

v.

**Roy A. MENLOVE, dba Menlove Construction Company, Defendant and Appellant.**

**No. 10405.**

Supreme Court of Utah.

Aug. 5, 1966.

George M. McMillan, Franklin D. Johnson, Salt Lake City, for appellant.

Bryce E. Roe, Salt Lake City, for respondent.

CROCKETT, Justice.

This suit arises out of a written contract by which the defendant Roy A. Menlove agreed to build a house for the plaintiff at 1203 Yale Avenue in Salt Lake City for cost plus ten per cent. Upon a trial by jury of the various issues presented it found: (1) that defendant had substantially performed; (2) that his reasonable cost plus ten per cent totaled $43,000; (3) that his request for reasonable attorney fees, costs and certain other disbursements was without merit; and (4) plaintiff was entitled to an offset of $1,230.22 damages for defendant's failures to fully perform. Defendant appeals, seeking judgment in the amount he claims due of about $49,000, or a new trial.

The contract referred to was entered into in November of 1962. It provided: (1) that the defendant was to construct the house in accordance with plans and at the most reasonable cost available, plus ten per cent; (2) that bills for labor, materials and expenses would be submitted to the plaintiff monthly, or more frequently if necessary; (3) that defendant would carry any type of insurance necessary in the state of Utah, and (4) that defendant would obtain all bids and information and consult with plaintiff before letting subcontracts. No limit was stated as to the overall cost, but testimony indicated it was intended to be about $35,000.

Defendant procured most of the materials through Apex Lumber Company in which he owns a substantial interest. The policy of Apex was to charge the contractor (Menlove) cost plus ten per cent for materials and supplies. Five per cent was allocated to overhead and five per cent was credited to the owner-purchaser's (Menlove's) equity in the Apex Company. The total of the cost plus ten per cent was charged to the plain-

tiff as part of the costs of construction. In addition to this, Menlove added another ten per cent for social security, payroll taxes and unemployment insurance; and to this total was added the final ten per cent for the contractor's profit.

For the months of November, December, January and February statements were presented to the plaintiff and were paid. Thereafter no statement was presented until June 10, 1963, when a statement covering March, April and May, totaling $19,000 plus dollars was presented to the plaintiff. This brought the total to $38,000, and there was several thousand dollars worth of work yet to be done, which precipitated controversy. The defendant continued to perform work on the premises for some months thereafter and eventually this lawsuit was filed to resolve their differences.

 It is defendant's position that since the jury found that he substantially performed his agreement to construct the house that it follows as a matter of law that he is entitled to the costs shown by his own evidence, plus the ten per cent profit agreed upon, totaling $49,630. The fallacy in this contention is the assumption that the jury was obliged to believe and accept the defendant's evidence and records as absolute. It is true that the jury cannot be permitted to unreasonably and arbitrarily disregard competent credible evidence. But it is their exclusive prerogative to determine the credibility of evidence and to find the facts. There are several things which the jury could regard as casting some doubt as to whether the records kept by the defendant on this job and in its relationship to others were complete and accurate. It was shown that there were some inadequacies and uncertainties as to a breakdown in relation to this Shupe residence. In fact, there was no such complete segregation made until shortly before the trial. It was also indicated that the defendant's men were permitted to keep their own time records and were not required to show what time was spent on the various phases of construction. The witnesses called by the defendant had an interest to serve. Two of the principal ones were the defendant's (Menlove's) sons associated in the construction business. Others were subcontractors who had not been paid and who admitted an interest in the outcome of the case.

As we have heretofore stated: "[W]herever there is a basis from which bias, prejudice or self-interest may be seen, or there is anything incredible in the testimony, the jury is not obligated to accept it." [1] Upon the grounds just discussed, and the record as we view it, there appears to be a reasonable basis in the evidence to justify the jury in refusing to believe that the cost plus ten per cent totaled more than the $43,000 awarded; and in finding that the plaintiff was entitled to the offset of $1,230.22.

1. See Page v. Fed. Security Insur. Co., 8 Utah 2d 226, 332 P.2d 666.

■ ·· Certain ·errors are assigned with respect to the instructions which we do not deem it necessary to detail but with respect thereto make these observations: In regard to refusal to give instructions, it is essential that the complaining party has submitted accurate requests, and that they be neither misleading nor argumentative.[2] The purpose of the instructions is sufficiently accomplished if they present the case to the jury in language from which they will understand the issues involved and which affords them an opportunity to ascertain the essential facts and resolve those issues. If this is done, the mere fact that the trial court failed to give instructions requested by the defendant, even though accurate, will not constitute reversible error.[3]

■ Error is also assigned in rejecting an exhibit prepared and offered in evidence by the defendant. It purported to summarize the claimed costs as shown in several more detailed exhibits, 5 through 12. Sec. 78–25–16 U.C.A.1953 permits the use of a summary of evidence in certain instances, one of which is subsection (5), when "the original consists of numerous accounts or other documents which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole." However, as we have heretofore stated: "[T]he evidence must be shown to be developed, from records, books or documents, the com-

petency of which has been established, and the records must be available for examination by the opposing parties and the witness subject to cross-examination concerning such evidence."[4] The question as to whether these conditions are met is for the trial court to determine and rests largely within his sound discretion. In regard to this exhibit Mr. Menlove testified:

"I utilized the invoices and the information on this invoice relative to materials and when they were delivered and the labor as is shown there, and by my own information or knowledge, what I could remember from the job. Also what type of work individuals were doing for us on the job."

In offering the exhibit counsel stated:

"We would stipulate that if there are any items which are contained in this exhibit, which are not reflected in the evidence, they may be disregarded." ·

In addition to these indications of uncertainty, it is further to be observed that exhibits 5 through 12 are neither so numerous nor so complicated that they could not be competently examined and appraised by the jury. The trial court was within its prerogative in excluding the proposed exhibit.

■ The final claim of error we give attention to is the trial court's refusal of defendant's request for attorney fees and costs. The pertinent statutes are:

2. Lund v. Mtn. Fuel Supply Co., 12 Utah 2d 268, 365 P.2d 633; Bloomquist v. Buffelen Mfg. Co., 47 Wash.2d 828, 289 P.2d 1041.

3. See Wilson v. Gardner, 10 Utah 2d 89, 348 P.2d 931; Earle v. Salt Lake &

Utah R. Corp., 109 Utah 111, 165 P.2d 877.

4. See Sprague v. Boyles Bros. Drilling Co., 4 Utah 2d 344, 294 P.2d 689.

"Section 38–1–17.—As between the owner and the contractor *the court shall apportion the costs according to the right of the case,* but in all cases each subcontractor exhibiting a lien shall have his costs awarded to him, including the costs of preparing and recording the notice of claim of lien and such reasonable attorney's fee as may be incurred in preparing and recording said notice of claim of lien. "Section 38–1–18.—In any action brought to enforce any lien under this chapter *the successful party shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs* in this action." (Emphasis added.)

It is plain that these two sections relating to this subject should be construed together and that when attorney fees are awardable thereunder they are to be treated as costs which, as expressed in 38–1–17 the court "shall apportion the costs according to the right of the case". Viewing the overall picture of this case in the light most favorable to the facts as found by the jury and to the verdict and judgment we cannot say that the trial court abused its discretion in rejecting defendant's contentions.

Judgment affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

WADE, J., heard the arguments but died before the opinion was filed.